**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **In re:** ) | | |
| ) | | |
| **DENISE P. ARRINGTON,** ) | **BK No. 12-70435-JHH13** | |
| ) | | |
| Debtor. ) | | |

---

| | | |
|---|---|---|
| **DENISE P. ARRINGTON,** ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | **A.P. No. 17-70029-JHH** | |
| ) | | |
| **OCWEN LOAN SERVICING, LLC,** ) | | |
| as servicing agent for U.S. Bank, ) | | |
| National Association; and U.S. Bank, ) | | |
| National Association, as trustee under ) | | |
| the Pooling and Servicing Agreement ) | | |
| dated as of May 1, 2006, GSAMP Trust ) | | |
| 2006-HE3, Mortgage Pass-Through ) | | |
| Certificates, Series 2006-HE3 ) | | |
| ) | | |
| Defendants. ) | | |

### AMENDED AND RESTATED MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER[1]

On September 11, 2017, Denise P. Arrington ("Arrington"), the plaintiff in the above-captioned adversary proceeding ("AP") and the debtor in the above-captioned bankruptcy case (the "Case"), filed a complaint for injunctive relief (AP Doc. 1) (the "Original Complaint")[2] and a motion for temporary restraining order (AP Doc. 2) (the "TRO Motion"). In the Complaint and TRO Motion, Arrington requests, among other relief, the entry of an order enjoining defendant Ocwen Loan Servicing, LLC ("Ocwen"), as servicer for U.S. Bank, National Association ("U.S. Bank"), and defendant[3] U.S. Bank, as trustee under the Pooling and Servicing Agreement dated as of May 1, 2006, GSAMP Trust 2006-HE3, Mortgage Pass-Through Certificates, Series 2006-HE3

---

[1] This amended and restated opinion and order (the "Amended Filing") is filed to correct certain non-substantive, clerical errors contained in the court's original opinion and order entered in the AP on September 22, 2017 at 5:37:03 p.m. local time (AP Doc. 14) (the "Original") and to clarify that the opinion and order is not intended for publication. The clerk's office is directed to restrict the Original from public viewing.

[2] The Original Complaint, as amended by AP Document 11 filed on September 22, 2017 (the "Amended Complaint"), is referred to herein as the "Complaint."

[3] U.S. Bank was added as a defendant by the Amended Complaint.

1

(the "MBS Trust"), from foreclosing the mortgage encumbering her home. The court held a hearing on Arrington's request for issuance of a temporary restraining order on September 20, 2017 at 10:00 a.m. (the "TRO Hearing").

## NOTICE

On September 11, 2017, Arrington's counsel mailed multiples copies of the Original Complaint and the TRO Motion to Ocwen—including to Ocwen care of its counsel in the Case, to Ocwen care of its foreclosure counsel, and to Ocwen at its Bankruptcy Noticing Center ("BNC") notice address. (Original Complaint at 6-7; TRO Motion at 5-6). Arrington's counsel also mailed the Original Complaint and TRO Motion to U.S. Bank, care of its Chief Executive Officer, on September 11, 2017. (*Id.*) On September 12, 2017, the court issued notice of the TRO Hearing. (AP Doc. 7). The BNC certificate for the hearing notice evidences that, on September 14, 2017, the BNC mailed the hearing notice to Ocwen and U.S. Bank at the addresses listed in the Original Complaint and TRO Motion. (AP Doc. 8 at 1.) Additionally, the BNC certificate of notice reflects that Ocwen received the hearing notice electronically, at its BNC e-mail address, on September 14, 2017 and that Ocwen's counsel in the Case received notice of the hearing through the court's CM/ECF system on September 12, 2017. (*Id.*)

Arrington, her husband, Sean D. Arrington (together with Arrington, the "Arringtons"), and Arrington's attorney, Marshall Entelisano, Esq. appeared for the TRO Hearing. No one appeared for Ocwen or U.S. Bank at the TRO Hearing. On the record of the TRO Hearing, and in an affidavit filed with the court following the TRO Hearing, Mr. Entelisano represented that, after filing the AP, he attempted to communicate with Ocwen's bankruptcy and foreclosure attorneys concerning the TRO Motion and TRO Hearing. (AP Doc. 10, ¶ 6.)

## JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334. This matter is a core proceeding as defined under 28 U.S.C. § 157(b), and venue is proper in this court under 28 U.S.C. § 1409.

## APPLICABLE LAW

This matter is governed by Rule 65 of the Federal Rules of Civil Procedure (the "Rules"), as made applicable by Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Pursuant to Bankruptcy Rule 7065, a temporary restraining order or preliminary injunction may be issued upon application of a debtor without compliance with Rule 65(c). Accordingly, Arrington need not give security to obtain a temporary restraining order or preliminary injunction.[4]

In order for this court to issue a temporary restraining order or preliminary injunction, Arrington must demonstrate: "'(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.'" *See In re JBJ Const. LLC*,

---

[4] To the extent additional security is required, the Cashier's Checks (as hereinafter defined) suffice.

2

13-72355-BGC-7, 2014 WL 1779376, at *1 (Bankr. N.D. Ala. May 5, 2014) (quoting *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) and citing *Parker v. State Bd. Of Pardons and Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001)).

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**[5]

It appears to the court from the record of the Case and the AP, and the documents and other uncontroverted evidence considered by the court at the TRO Hearing, as follows:

1. The Arringtons, as husband and wife, executed a mortgage dated January 24, 2006 in favor of Mortgage Electronic Registration Systems, Inc., as nominee for GMFS, LLC ("MERS"), which was thereafter recorded in the Office of the Judge of Probate of Tuscaloosa County, Alabama (the "Recording Office"), on January 26, 2006 in Mortgage Book 2006, Page 7656 (the "Mortgage"). (Stay Motion[6] at 13-27; Stay Motion, Ocwen Aff, ¶ 4; AP Doc. 4, Arrington's Ex. A at 7-21.)[7]

2. The Mortgage encumbers the real property commonly known as 5606 Shenandoah Drive, Northport, Alabama 35473 (the "Mortgaged Property"), which is the residence of the Arringtons. (Mortgage, *passim*; Stay Motion at 1; Amended Complaint, ¶¶ 7, 39-40; AP Doc. 3, Arrington's Aff., ¶ 2; Petition[8] at 20, 25.)

3. The Mortgage secures a home mortgage loan (the "Home Loan") evidenced by, among other documents, a promissory note made by Arrington in favor of GMFS, LLC dated January 24, 2006 in the original principal amount of $148,000.00 (the "Note"); a loan modification agreement executed by and among the Arringtons and LaSalle Bank National Association, as trustee under the Pooling and Servicing Agreement dated as of May 1, 2006, GSAMP Trust 2006-HE3, and recorded in the Recording Office on September 28, 2007 in Book 2007, Page 101897 (the "2007 Loan Modification"); and a home affordable modification agreement between Arrington and Ocwen that was signed by Arrington on or about December 13, 2012 (the "2012 Loan Modification," and collectively with the Note, the 2007 Loan Modification, and the Mortgage, the "Home Loan Documents"). (Stay Motion at 7-12, 30-44; Stay Motion, Ocwen Aff., ¶ 4; Consent Order,[9] ¶ 2; AP Doc. 4, Arrington's Exs. A, B; AP Doc. 12, Arrington's Ex. R.)[10]

---

[5] Because of the preliminary nature of the TRO Hearing, the court adopts the following as the court's findings of fact or conclusions of law for the purposes of this memorandum opinion and order only.
[6] This term is hereinafter defined.
[7] The copy of the Mortgage submitted by Ocwen as an exhibit to the Stay Motion and the copy offered by Arrington in support of the TRO Motion are the same. As such, hereinafter, the court will cite to the "Mortgage," without reference to the parties' respective filings.
[8] This term is hereinafter defined.
[9] The Consent Order (as hereinafter defined) references the 2012 Loan Modification. Arrington filed what she believes to be the operative 2012 Loan Modification in the AP after the TRO Hearing. (Amended Complaint, ¶ 12; AP Doc. 12, Arrington's Ex. R.)
[10] The copies of the Note and 2007 Loan Modification submitted by Ocwen as exhibits to the Stay Motion and the copies offered by Arrington in support of the TRO Motion are the same. As such, hereinafter, the court will cite to the "Note" and the "2007 Loan Modification," without reference to the parties' respective filings.

4. Arrington filed a petition for bankruptcy relief (Case Doc. 1) (the "Petition") under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") on March 1, 2012 (the "Petition Date").

5. The court entered an order confirming Arrington's amended chapter 13 plan dated August 30, 2012 (Case Doc. 63) (the "Plan") on October 23, 2012 (Case Doc. 82) (the "Confirmation Order").

6. The Plan averred that Arrington was current on her Home Loan payments as of the Petition Date, provided that Arrington would cure any pre-petition defaults on the Home Loan through her Plan, and stated that she would make the post-petition Home Loan payments directly to the servicer of the Home Loan. (Plan at 1.)

7. The Plan also averred that Arrington was current on payments owed on a second loan secured by the Mortgaged Property (the "Second Loan"), provided that Arrington would cure any pre-petition defaults on the Second Loan through her Plan, and stated that she would make the post-petition Second Loan payments directly to the servicer of the Second Loan. (Plan at 1; *see also* Petition at 25.)

8. Neither the holder nor the servicer of the Home Loan filed a proof of claim for pre-petition arrears in the Case. (*See* Claims Register.)

9. Neither the holder nor the servicer of the Second Loan filed a proof of claim for pre-petition arrears in the Case. (*See* Claims Register.)

10. On or about December 13, 2012, Arrington and Ocwen entered into the 2012 Loan Modification. (Consent Order, ¶ 2.) No party sought bankruptcy court approval of the 2012 Loan Modification. (*See* Case Docket.) Arrington testified at the TRO Hearing that the unpaid balance of the Second Loan was waived or forgiven under the terms of the 2012 Loan Modification.[11]

---

[11] After the TRO Hearing, Arrington filed what she alleges is a copy of the 2012 Loan Modification in the AP. (Amended Complaint, ¶ 12; AP Doc. 12, Arrington's Ex. R.) The document reflects an increase to the principal amount of the Home Loan from approximately $155,061.16 (the principal amount of the Home Loan under the 2007 Loan Modification, after capitalization of past due amounts) to $202,088.58. (AP Doc. 12, Arrington's Ex. R, ¶ C.) Of this total amount, $53,988.58 is treated as a non-interest bearing principal forbearance (the "Deferred Principal Balance"). (*Id*.) A portion of the Deferred Principal Balance ($17,088.58) was eligible for forgiveness, so long as Arrington was not in default by three or more monthly payments on August 1, 2013, August 1, 2014, or August 1, 2015. (*Id*.) The copy of the 2012 Loan Modification filed by Arrington does not specify the "amounts and arrearages" capitalized to the principal balance of the Home Loan. (*Id*.) However, given the principal amount of the Home Loan at the time of the 2007 Loan Modification (approximately $155,000.00), Arrington's averment in her Plan that she was not in default under the terms of the Home Loan on the Petition Date, and the fact that neither the holder nor the servicer of the Home Loan filed a proof of claim for pre-petition arrears in the Case, it appears that the amounts owed on the Second Loan likely were added to the principal balance of the Home Loan under the 2012 Loan Modification. (If not, Arrington would have had to have missed nearly every Home Loan payment between the dates of the two loan modifications for the capitalized, accrued interest to exceed $50,000.00.) Further, given that the Stay Motion was based on *2016* payment defaults (see Stay Motion, *passim*) it appears that at least a portion of the Deferred Principal Balance ($17,088.58) likely has been forgiven.

4

11. On or about October 19, 2016, Ocwen, as servicer for US Bank, as trustee for the MBS Trust, filed a motion for relief from the automatic stay of Bankruptcy Code Section 362(a) and the co-debtor stay of Bankruptcy Code Section 1301 (Case Doc. 103) (together with all exhibits and the accompanying affidavit, the "Stay Motion"), seeking relief to exercise its rights and remedies in and to the Mortgaged Property under the Home Loan Documents and applicable state law.

12. Ocwen and Arrington resolved the Stay Motion and submitted a consent order, which the court approved and entered in the Case on February 28, 2017 (Case Doc. 123) (the "Consent Order").

13. Among other things, the Consent Order: (a) acknowledged and affirmed the 2012 Loan Modification; (b) modified the terms of the 2012 Loan Modification to provide that certain post-petition mortgage arrears owed on the Home Loan, totaling $3,283.18 (the "Post-Petition Arrears"), would be due at the end of the term of the 2012 Loan Modification; (c) extended the term of the 2012 Loan Modification to the extent necessary to permit the Post-Petition Arrears to be paid off by continued, regular, monthly Home Loan payments following the stated maturity of the Home Loan; (d) directed Arrington to resume the monthly, Home Loan payments in the amount of $624.73, beginning with the February 1, 2017 payment; (e) determined Arrington to be fully current on the Home Loan as of the date of the Consent Order, February 28, 2017; and (f) obligated Ocwen to file a Final Cure Response,[12] confirming that Arrington was not in default post-petition, so long as Arrington made all Home Loan payments on a timely basis, beginning February 1, 2017. (Consent Order at ¶¶ 2-4, 6.)

14. On March 23, 2017, Johnathan Smothers, Esq. of Shapiro & Ingle, LLC ("Bankruptcy Counsel"), as counsel for Ocwen, filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges (Case Doc. 127), stating that Ocwen had incurred filing fees and costs in the amount of $176.00 on November 8, 2016 for its reimbursement to Bankruptcy Counsel of the Stay Motion filing fee (the "Filing Fee"). Based on the terms of the Consent Order, Arrington is not required to pay the Filing Fee to cure a default or maintain payments on the Home Loan. (Consent Order, *passim*.)

15. Arrington received a discharge in the Case on April 10, 2017 (Case Doc. 129), and the Case was closed on May 31, 2017.

16. Arrington timely and fully paid, and Ocwen accepted, each of the Home Loan payments for the months of February, March, April, May, and June of 2017. (AP Doc. 3, Arrington Aff., ¶ 10; AP Doc. 4, Arrington's Exs. E, F, G, H, I.)

17. Arrington timely tendered full payment for the July 2017 Home Loan payment (the "July 2017 Payment"). (AP Doc. 4, Arrington's Ex. J.)

---

[12] No proof of claim was filed by or on behalf of the holder of the Home Loan, and the chapter 13 trustee did not send a Bankruptcy Rule 3002(f) notice of final cure. (*See* Claims Register.)

5

18. On or about July 5, 2017, Ocwen returned the July 2017 Payment with a letter stating, "These funds are being returned, as they are not sufficient to satisfy the reinstatement amount of your account" (the "July 5th Letter"). (*Id.*)

19. The Mortgage provides that the Mortgage holder may "return any payment or partial payment *if the payment or partial payments are insufficient to bring the [Home] Loan current*." (Mortgage at ¶ 1 (emphasis added).)

20. Because, under the terms of 2012 Loan Modification as modified by the Consent Order, Arrington was current on her Home Loan payments, Ocwen was not entitled to return the July 2017 Payment.

21. Pam King, Esq. of Sirote & Permutt, PC ("Foreclosure Counsel"), as counsel for Ocwen, as servicer for U.S. Bank, as trustee for the MBS Trust, mailed a letter to the Arringtons on or about August 25, 2017 (the "August 25th Letter"), purporting to accelerate the maturity of the Home Loan and notifying the Arringtons that a foreclosure sale of the Mortgaged Property had been scheduled for October 3, 2017 in front of the main entrance of the Tuscaloosa County, Alabama courthouse, during the legal hours of sale (the "October 3rd Foreclosure Sale"). (AP Doc. 4, Arrington's Exs. P, Q.)

22. The Home Loan Documents provide that the Note holder may notify Arrington that if she does not pay any overdue amount by a date certain (at least 30 days' after the date the notice is mailed), *then* the Note holder may accelerate the Home Loan and demand immediate payment of the principal and interest owed on the Home Loan. (Note, ¶ 7(D); *see also* 2007 Loan Modification, ¶ 4(a); AP Doc. 12, Arrington's Ex. R, ¶ G.)

23. Neither the July 5th Letter nor the August 25th Letter included the requisite 30 days' notice, and Arrington testified at the TRO Hearing that Ocwen had not notified her that her Home Loan would be accelerated if she failed to pay the allegedly overdue amount within 30 days.[13]

24. Absent the requisite 30 days' notice, the August 25th Letter could not accelerate the maturity of the Home Loan.

25. Counsel for Arrington is holding cashier's checks payable to Ocwen for the July, August, and September 2017 Home Loan payments (collectively, the "Cashier's Checks").[14] Accordingly, counsel for Arrington is holding sufficient funds to bring the Home Loan current.

26. Ocwen's continued refusal to accept Arrington's Home Loan payments violates the terms of the Consent Order and the Home Loan Documents.

---

[13] Arrington also received a statement dated July 5, 2017 for the Second Loan, stating that the full balance of the Second Loan was due and owing. (AP Doc. 4, Arrington's Ex. J.) As noted above, Arrington testified that the amounts owed on the Second Loan were waived or forgiven as part of the 2012 Loan Modification, and it appears to the court, based on the copy of the 2012 Loan Modification filed after the TRO Hearing and the other documents and evidence before the court, that the Second Loan balance likely was added to the Home Loan as part of the 2012 Loan Modification and, at least partially, forgiven.

[14] The undersigned inspected the Cashier's Checks at the TRO Hearing.

27. Arrington's counsel represented on the record of the TRO Hearing that he had attempted to correspond with Bankruptcy Counsel and Foreclosure Counsel concerning Ocwen's apparent violations of the Consent Order but had received no response (other than Bankruptcy Counsel's representation that the firm had not been retained in connection with the AP). (*See also* AP Doc. 10, ¶ 6.)

28. Although the Home Loan was not discharged in the Case, see 11 U.S.C. §§ 1322(b)(5), 1328(a)(1), a creditor's willful failure to credit payments received under a plan confirmed under the Bankruptcy Code can constitute a violation of the discharge injunction codified by Bankruptcy Code Section 524(a). *See* 11 U.S.C. § 541(i).

29. Since Ocwen, in the Consent Order, agreed that all Home Loan payments were current as of February 28, 2017, and Arrington has tendered proof of all payments coming due since that time, Ocwen's conduct in refusing payments based on some alleged overdue amount may violate Bankruptcy Code Section 524(i). *See In re Avery*, 06-80210-WRS, 2009 WL 190038, at *2 (Bankr. M.D. Ala. Jan. 27, 2009), *aff'd in part, rev'd in part*, 434 B.R. 895 (M.D. Ala. 2010) ("[I]n some cases a borrower will make his regular monthly 'maintenance' payments directly to the mortgage holder as called for by his Chapter 13 Plan. Instead of applying these payments as called for by the Plan, some mortgage holders have improperly applied these payments to the oldest unsatisfied payment and report the current payment as delinquent, improperly charging fees and improperly reporting the mortgage as in default. Such conduct would violate the provisions of 11 U.S.C. § 524(i)") (reversed on other grounds).

30. Even if Ocwen's conduct does not amount to a violation of the Section 524 discharge injunction, there is a substantial likelihood that Arrington will succeed in establishing that Ocwen's conduct violates the Consent Order. The payments required by the Home Loan Documents, as modified by the Consent Order, were timely and fully made through June of 2017. Consequently, the July 5th Letter's statement that the July 2017 Payment—which was timely and fully made by Arrington—"was not sufficient to satisfy the reinstatement amount of [Arrington's] account" suggests that Ocwen has improperly applied payments in violation of the terms of the Consent Order (and the Home Loan Documents modified thereby).

31. A court has the inherent power to enforce its orders, including through civil contempt proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("it is firmly established that the power to punish for contempts is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines") (internal quotations and citation omitted); *Alderwoods Group Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012) ("a bankruptcy court is no different than any other federal court, which possesses the inherent power to sanction contempt of its orders").

32. Arrington will suffer irreparable harm if the October 3rd Foreclosure Sale goes forward. She will lose title to the Mortgaged Property, her home, and will only be able to regain such title if she redeems the Mortgaged Property in accordance with applicable state law or succeeds in having the October 3rd Foreclosure Sale set aside.

7

33. Conversely, because there is no indication that the Mortgaged Property is diminishing in value, because the Cashier's Checks are sufficient to bring the Home Loan current under the terms of the Consent Order, and because the Mortgaged Property shall remain as collateral for the Home Loan, any damage to Ocwen, U.S. Bank, or the MBS Trust that might result from the issuance of the below set forth temporary injunction is outweighed by the harm that Arrington will suffer if the October 3rd Foreclosure Sale takes place.

34. The temporary restraining order requested by Arrington is not adverse to the public interest.

35. Ocwen and US Bank received adequate notice of the TRO Hearing. As such, this order is issued **WITH NOTICE** to Ocwen and U.S. Bank.

For the reasons set forth herein and on the record of the TRO Hearing, it is **ORDERED, ADJUDGED, and DECREED** as follows:

A. **Temporary Restraining Order**. Ocwen, as servicer for U.S. Bank, as trustee for the MBS Trust; U.S. Bank, as trustee for the MBS Trust; and any other servicer, trustee, custodian, or other agent authorized to foreclose the Mortgaged Property on behalf of the MBS Trust is enjoined from commencing or continuing proceedings to foreclose the Mortgaged Property pending the conclusion of the below referenced Preliminary Injunction Hearing. **Without limiting the foregoing, neither Ocwen, nor U.S. Bank, nor Foreclosure Counsel may conduct, postpone, or continue the October 3rd Foreclosure Sale.**[15]

B. **Preliminary Injunction Hearing**. The court will hold a preliminary injunction hearing on the Complaint and TRO Motion on **October 4, 2017 at 10:00 a.m.** in Room 2600, United States Courthouse, 2005 University Boulevard, Tuscaloosa, Alabama (the "Preliminary Injunction Hearing"). Without limitation, at the Preliminary Injunction Hearing, the court will consider (1) whether to require Ocwen and U.S. Bank to accept the Cashier's Checks in satisfaction of the July, August, and September 2017 Home Loan payments (and to accept future payments made by the Arringtons while the AP is pending) and (2) whether to enjoin Ocwen and U.S. Bank from continuing or commencing foreclosure proceedings with respect to the Mortgaged Property while the AP is pending. **Pursuant to Rule 65(a)(2), the court hereby advances the trial on the merits on Arrington's requests for declarations (1) that the Home Loan is current as of September 2017, and (2) that the Home Loan has not been accelerated.**

C. **Show Cause Hearing**. On **October 4, 2017 at 10:00 a.m.** in Room 2600, United States Courthouse, 2005 University Boulevard, Tuscaloosa, Alabama, **Ocwen**, as servicer for U.S. Bank, as trustee for the MBS Trust, is required to **APPEAR** and **SHOW CAUSE** why Ocwen should not be held in contempt of court for violating the Consent Order (the "Show Cause Hearing"). If Ocwen is found to be in violation of the provisions of the Consent Order issued for Arrington's benefit, the court may impose sanctions to compel compliance with the Consent Order. Without limitation, compensatory fines may be awarded to Arrington; provided, however, any

---

[15] The Amended Filing does not alter the date or hour of issuance of this temporary restraining order—**September 22, 2017 at 5:37:03 p.m. local time.**

8

such fines shall be limited to the actual damages suffered by Arrington, including, without limitation, attorney's fees.

**D. Bankruptcy Counsel,[16] Foreclosure Counsel,[17] and a representative or representatives of Ocwen (or U.S. Bank) who is/are familiar with the Home Loan and can provide testimony concerning the alleged defaults in payment of the Home Loan are required to appear in person for the Preliminary Injunction Hearing and the Show Cause Hearing.**

**E. Continuances of Preliminary Injunction Hearing and Show Cause Hearing**. Requests for continuances of the Preliminary Injunction Hearing and Show Cause Hearing (together, the "October 4th Hearings") must be made by motion and will only be granted for cause shown.

**F. Service of this Order with Summons and Complaint**. The clerk of court shall serve this order on Ocwen, U.S. Bank, Bankruptcy Counsel, and Foreclosure Counsel, either electronically or by United States mail. Additionally, no later than **September 25, 2017**, Arrington's counsel shall serve Ocwen with the summons issued on September 20, 2017 (AP Doc. 9), a copy of the Original Complaint, a copy of the Amended Complaint, and a copy this order. Service of the foregoing shall be made in accordance with the requirements of Bankruptcy Rule 7004(c)(3) (i.e., by first class mail, postage prepaid, directed to the attention of an officer, managing agent or general agent, or to any other agent authorized by appointment or by law to receive service of process on behalf of Ocwen) or Rule 4(h), and Arrington's counsel shall file proof thereof, as required by Rule 4(l)(1) (i.e., by the server's affidavit), no later than **September 25, 2017**. Arrington's counsel also shall serve U.S. Bank with the summons issued on September 22, 2017 (Doc. 13), a copy of the Original Complaint, a copy of the Amended Complaint, and copy of this order in the manner specified by Bankruptcy Rule 7004(h) (i.e., by certified mail addressed to an officer of the institution) or Rule 4(h), not later than **September 25, 2017**, and Arrington's counsel shall file proof thereof, as required by Rule 4(l)(1), no later than **September 25, 2017**. Arrington's counsel also shall e-mail copies of this order to Foreclosure Counsel and Bankruptcy Counsel on or before **September 25, 2017** and file proof of the same on or before **September 25, 2017**. **Bankruptcy Counsel and Foreclosure Counsel are directed to promptly forward this order to Ocwen's legal department.**[18]

**DONE** this the 25th day of September, 2017.

/s/ JENNIFER H. HENDERSON
UNITED STATES BANKRUPTCY JUDGE

---

[16] Bankruptcy Counsel negotiated, drafted, and submitted the Consent Order to the court for entry. Accordingly, Bankruptcy Counsel is required to participate in the Show Cause Hearing, irrespective of whether the firm has been retained to defend the AP.

[17] Foreclosure Counsel is representing Ocwen in connection with the October 3rd Foreclosure Sale, which is the subject of this AP, and the firm's participation is needed to confirm that Ocwen, U.S. Bank, and Foreclosure Counsel have complied with this court's temporary restraining order.

[18] As the Amended Filing contains no substantive changes, neither the clerk's office nor Arrington's counsel is required to serve the Amended Filing. The service requirements set forth in paragraph F apply only to the Original.